IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL MACAHILAS,

        Plaintiff,                  No. CIV S-06-0502 GEB KJM P

vs.

R.N. TAYLOR, et al.,

        Defendants.            FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. He alleges that nurses Taylor and Stores failed to respond adequately to his medical condition in December 2004 and January 2005, which ultimately resulted in plaintiff's five-month hospitalization. Defendants have filed a motion to dismiss, arguing that plaintiff failed to exhaust his administrative remedies.

I. Administrative Exhaustion In California Prisons

        The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Conditions of confinement" subject to exhaustion have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2); Smith

1

v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001); see also Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). Proper exhaustion of available remedies is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001); Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006) (addressing timeliness aspect of proper exhaustion).

California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5.

The regulations contain time limits for an inmate's actions: they generally require an inmate to file his initial grievance within fifteen working days of the event from which the grievance arises. Cal. Code Regs. tit. 15, § 3084.6(c). The appeals coordinator may reject a grievance if "time limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." Cal. Code Regs. tit. 15, § 3084.3(c)(6).

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. Defendants bear the burden of proving plaintiff's failure to exhaust. Id. at 1119. In addition, defendants must prove that relief remained available, either at unexhausted levels of the grievance process or through awaiting the results of relief already granted. Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

/////
/////
/////

II. <u>Analysis</u>

Defendants have not submitted any documents but instead rely on the complaint and its attachments to argue that plaintiff has not properly exhausted his administrative remedies. Exhibit A to the complaint consists of several documents: a grievance form, dated August 1, 2005, initially complaining that Taylor and Stores (identified as John Doe) ignored his complaints of pain and illness on December 23, 2004 and January 18, 2005, which ultimately resulted in his hospitalization on January 20, 2005.  Plaintiff wrote that he had been bed-ridden at an outside hospital from January 21 until June 8, 2005, and "was unable to submit this 602 form during the time I suffered the life threatening injury" caused by the two defendants.  Complaint (Compl.), Ex. A (grievance form dated 8/1/2005, section A).

This grievance was screened out because "there has been too great a TIME LAPSE between when the action . . . occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion." Compl., Ex. A (Screening Form dated 8/18/05).

In section D of the grievance form, in taking his complaint to the first formal level, plaintiff wrote, "I clearly explain [sic] why I could not file 602 in a timely fashion. I was incapacitated at a outside hospital in Modesto." Compl., Ex. A (grievance form, section D). Plaintiff continued his attempts to have his grievance heard, filling out sections F and H, seeking review of his grievance at the first, second and Director's levels, and explaining his reason for not submitting the form earlier. <u>Id</u>. On September 2 and 27, 2005, respectively, his first and second level grievances were returned as untimely. <u>Id</u>. (form letters from Appeals Coordinator, while identified as responding to informal level grievances, dated to correspond to first and second level submissions). On December 10, 2005, plaintiff received a letter from the Inmate Appeals Branch where Director's Level review is performed, returning his grievance form because he had not received a second level decision. <u>Id</u>. (letter from N. Grannis).

/////

1   Defendants argue that plaintiff has not exhausted administrative remedies properly
2 as required by Woodford, 548 U.S. at __, 126 S.Ct. at 2385.  Specifically, they contend plaintiff
3 could have filed grievances promptly after his December 23, 2004 visit to defendant Taylor and
4 again after his later visit to defendant Stores, but instead waited almost two months after his
5 release from the outside hospital.  Motion To Dismiss (MTD) at 8.  In their reply, defendants
6 again contend that plaintiff should have filed grievances promptly after receiving the allegedly
7 inadequate care because he "makes it quite clear that he was dissatisfied with the care . . . ."
8 Reply at 2:11-15.  They also argue that plaintiff further delayed in filing his grievance after he
9 returned from the hospital.  Id. at 2:10-15.  They conclude that the focus of the PLRA "is on
10 providing the institution with the opportunity to consider the grievance," a purpose which would
11 not be served by a "review of excuses."  Reply at 2:19-21 (emphasis in original).

12   Plaintiff has submitted his declaration, describing the course of his illness.  He
13 avers that on or about January 21, 2005, he lapsed into a coma, which required placement of a
14 chest tube and use of a mechanical ventilator.  Opposition (Opp'n), Declaration of Michael
15 Macahilas (Macahilas Decl.) ¶ 5.  He adds that when he was admitted to the hospital in January
16 2005, he weighed about 150 pounds, but was only 100 pounds at discharge on June 18, 2005.  Id.
17 ¶ 9.  He continues:

> During . . .my recuperation, I did not feel well enough to even
> realize that I had a claim against the defendants, let alone my need
> to file a grievance against them for their deliberate indifference to
> my serious medical needs.
>
> As soon as I felt well enough, and had my wits about me, I filed a
> grievance, explaining my incapacity to file sooner, due to the life
> threatening injuries.

23 Macahilas Decl. ¶¶ 10-11.  Defendants have not submitted medical records or other evidence of
24 plaintiff's medical condition after he was discharged from the outside hospital.
25 /////
26 /////

4

A. Exhaustion During Or Immediately Following The Hospitalization

In Days v. Johnson, 322 F.3d 863 (5th Cir. 2003), plaintiff alleged he was unable to file his grievance in a timely fashion because his broken hand rendered him unable to write. When his hand healed, he submitted a grievance, which was rejected as untimely and returned to him unprocessed. He destroyed the form and filed suit, which was dismissed without prejudice for failure to exhaust. His second attempt to exhaust his administrative remedies also was rejected as untimely. He returned to the district court, which rejected his attempt to revive his case. The Fifth Circuit reversed:

> We . . . do not hold that an untimely grievance in and of itself would render the system unavailable . . . . We emphasize that our holding is limited to the narrow facts of this case. More specifically, administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies on the untimely filing of the grievance.

Id. at 867-68. The court in Days suggested it might not reach the same result if the administrative procedures included provisions for waiving the time limits for good cause. Id. at 868 n.7; but see Ferrington v. Louisiana Department of Corrections, 315 F.3d 529 (5th Cir. 2002) (blind inmate not excused from exhausting administrative remedies when blindness in his case did not prevent him from filing his § 1983 action).

In this case, plaintiff has submitted evidence that he was hospitalized from January 21 until June 18, 2005 and his own unrebutted declaration in which he describes the lingering effects of his long illness even after the discharge from the hospital. On the record before the court, and as in Days, it is reasonable to conclude plaintiff's illness and its after effects were responsible for plaintiff's inability to file his grievance in a timely fashion.

It is true that Days predates Woodford, but this court does not read Woodford as overruling Days. In Woodford, the Court held that the PLRA requires proper exhaustion, "which means using all steps that the agency holds out, and doing so *properly*. . . ." 548 U.S. at __, 126

S. Ct. at 2385 (internal quotes & citation omitted; emphasis in original).  It emphasized that exhaustion requirements are designed in part for those who do not wish to exhaust and thus give "prisoners an effective incentive to make full use of the prison grievance process. . . ." Id. at 2387-88.  Moreover, in Woodford, the plaintiff had willfully failed to comply with the administrative scheme; as the Court observed, it made little sense to allow a party "to bypass deliberatively the administrative process by flouting the agency's procedural rules." Id. at 2389. Woodford did not consider a situation in which a grievance was rejected as untimely at all levels of review even though the record supports a conclusion that an inmate did not have the opportunity for timely filing.

Defendants suggest that a late appeal equals a failure to exhaust, whatever the reason for the inmate's delay in seeking administrative redress, because the PLRA does not contemplate a "review of excuses" and because Woodford requires "proper exhaustion." Reply at 1, 2.  The court does not agree with this restrictive reading.

In Woodford, the Court found that proper exhaustion required an inmate to pursue all the steps in the state's "critical procedural rules," whatever those might be.  Id. at 2388. Similarly, in Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 922 (2007), the Court recognized that the requirements for exhaustion "are defined not by the PLRA, but by the prison grievance process itself."  The "boundaries of proper exhaustion" are set by the terms of the applicable regulations.  Id. at 923.

Under California's regulations, a grievance must be filed within fifteen working days, but the grievance coordinator may reject it as untimely only if "the appellant had the opportunity to file within the prescribed time constraints."  Cal. Code Regs. tit. 15, § 3084.3(c)(6).  In other words, built into California's regulatory scheme is a requirement that the institution conduct a "review of excuses" before rejecting a grievance containing such an excuse as untimely.  Under the PLRA, this court must consider the institutional requirements in determining whether an inmate has exhausted his remedies and thus must consider whether

6

plaintiff had the opportunity to file within the time limits or whether such a rejection by prison administrators was an abuse of discretion.  See Woodford, 548 U.S. at __, 126 S.Ct. at 2392-93 (Court found it had no occasion to decide how to address the possibility that prison officials "might create procedural requirements for the purpose of tripping up all but the most skillful prisoners. . . .").

        The court finds in this case that administrative remedies were no longer available when the grievance coordinators at all levels rejected plaintiff's explanation for his late filing. Cf. Days 322 F.3d at 867-68.  Moreover, defendants have presented nothing rebutting plaintiff's contention that his mind was too clouded by his documented illness to allow him to pursue his administrative remedies immediately upon his return to the institution's hospital.

    B. Exhaustion Before the Hospitalization

        Defendants also argue that plaintiff was required to file his grievances promptly after each unsatisfactory medical visit, before he went to the hospital.  MTD at 8.  Plaintiff counters that he was not aware of the extent of his problem until he was admitted to the outside hospital.  Opp'n at 9.  This argument also is well taken. Given the record on the pending motion.

        California's regulations provide:

> Any inmate . . . may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare.

15 Cal. Code Regs. § 3084.1(a).  As plaintiff observes, he did not experience an adverse effect or know how adverse an effect defendants' alleged derelictions had on his welfare until he was taken to an outside facility for treatment.  Moreover, defendants have not cited to regulations or definitions that pinpoint the time the fifteen day period begins to run when the problem is ongoing or is not initially obvious, and the court is not aware of any such administrative guidance.

        The District Court for the Western District of New York has considered a similar claim.  In Borges v. Piatkowski, 337 F.Supp.2d 424 (W.D.N.Y. 2004), a piece of dental

equipment was left in the inmate's jaw during the extraction of a wisdom tooth. He sought treatment from defendant for the ensuing pain, but received no relief. Eventually, he was sent to an outside facility, which found the piece of drill bit in plaintiff's jaw and wrote a report, which may have been sent to the defendant. Plaintiff, however, was not notified of the cause of his pain and problems until he was transferred to another prison and seen by another dentist. Id. at 425-26. Plaintiff did not file a grievance.

Defendant argued that plaintiff had failed to exhaust administrative remedies because he had been told he had a cyst on his jaw and was aware that defendant was not treating this condition. Id. at 426. Plaintiff argued that he could not file a grievance within the fourteen day time limits of New York's regulations because he was unaware of the nature of defendant's wrongdoing. Id.

The court in Borges found that administrative remedies were not available. It reasoned that when plaintiff returned from the outside consultation, he could have believed defendant was working to set up a return visit to the outside dentist. In addition, plaintiff was not aware that defendant may have been informed of the true nature of plaintiff's condition, yet had refused to treat it. Id. at 427. When plaintiff did learn of the object left in his jaw and the possibility that defendant had been aware of it yet had done nothing, more than fourteen days had elapsed since defendant's allegedly unconstitutional conduct.

Defendants have presented nothing showing that plaintiff could or should have been aware of the ultimate adverse effect of their alleged actions or inactions before he was hospitalized. As in Borges, administrative remedies do not appear to have been available to plaintiff immediately following his December 2004 and January 2005 medical appointments.

Given the above conclusions the court need not reach plaintiff's argument that a retroactive application of Woodford would be unfair.

IT IS HEREBY RECOMMENDED that defendants' March 28, 2007 Motion to Dismiss is denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2008.

_____
U.S. MAGISTRATE JUDGE

2/maca0502.57