IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL MACAHILAS,

    Plaintiff,                      No. CIV S-06-502 GEB KJM P

    vs.

R.N. TAYLOR, et al.,

    Defendants.              FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendants Taylor and Storrs[1] were deliberately indifferent to his serious medical needs. Defendants have filed a motion for summary judgment. Plaintiff has opposed Taylor's motion for summary judgment but "apologizes to Nurse Storrs for misidentifying him as the nurse who saw him" and does not oppose Storrs' motion. Storrs' motion thus should be granted. Taylor's motion is discussed below.

/////

/////

/////

---

[1] Plaintiff spelled this defendant's name "Stores" in the complaint; the court adopts the correct spelling as reflected in the motion for summary judgment.

1

I.  Standards For A Summary Judgment Motion

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See <u>Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See <u>Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

/////

1    On January 19, 2007, the court advised plaintiff of the requirements for opposing
2 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
3 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.
4 Eikenberry, 849 F.2d 409 (9th Cir. 1988).
5 II.  Facts
6    Plaintiff is an inmate at Mule Creek State Prison.  Compl. at 1-2.  Charlice Taylor
7 is a registered nurse, employed at Mule Creek State Prison.  Motion for Summary Judgment
8 (MSJ), Declaration of Charlice Taylor (Taylor Decl.) ¶ 1.  At the time relevant to plaintiff's
9 claims against her, Taylor worked in the A yard clinic doing assessments of patients; this job
10 included taking vital signs, taking medical histories, obtaining specimens for testing, monitoring
11 patients and administering medications as directed by a doctor.  Id. ¶ 2.
12    When an inmate seeks medical care for a non-threatening problem, he must fill
13 out a Health Care Service Request Form 7362 (Form 7362).  From these forms, the clinic nurse
14 devises a schedule of inmates with emergent problems to be seen immediately.  Taylor Decl. ¶ 3
15 & Ex. A.  According to California Department of Corrections and Rehabilitation (CDCR) policy,
16 the triage nurse shall annotate the Form 7362 with a physician referral, if deemed necessary.  The
17 Form ultimately is filed in the inmate's medical records.  Taylor Decl. ¶ 3 & Ex. A, Section
18 III.C.6-7.
19    On December 23, 2004, plaintiff began to have difficulty breathing.  On a Form
20 7362 dated that day, he wrote, "brochittis is reoccured.  Coughing."  Opp'n, Declaration of
21 Michael Macahilas (Macahilas Decl.) ¶¶ 1-2 (reproduced as in original); Taylor Decl. ¶ 7 & Ex.
22 B.  The correctional officer at the clinic entrance took plaintiff into the clinic and asked Taylor to
23 see him.  Macahilas Decl. ¶ 7.  Taylor avers she does not remember the events of December 23
24 and has relied on medical records to recreate her actions on that day.  Taylor Decl. ¶ 5.
25    According to Taylor, plaintiff reported he had been coughing with mucous for a
26 week and had a sore throat and chest.  Id. ¶ 8 & Ex. C.  She observed that plaintiff's lungs were

1  clear with a good airflow, both exhaling and inhaling.  Id.  She recorded that plaintiff's vital
2  signs were within normal limits, that he was not in distress and that he was able to cough up
3  mucous.  Id.  She did note that plaintiff was "at risk for infection as evidence[d] by his coughing
4  up mucous."  Id.  However, nurses are not licensed to make a diagnosis of a patient nor
5  recommend treatment.  Declaration of Mark Storrs (Storrs Decl.) ¶ 9.

6  It appears to Taylor that, based on her nursing assessment, Dr. Galloway
7  instructed her to order a prescription for cough drops, which she did.  Taylor Decl. ¶ 8; see also
8  Opp'n, Decl. of Richard Galloway, M.D. (Galloway Decl.) ¶ 5.  Taylor is not authorized to write
9  prescriptions herself.  Taylor Decl. ¶¶ 8, 9; Storrs Decl. ¶ 9.

10 According to plaintiff, he told Taylor that because he had bronchitis in the past, he
11 knew the symptoms and so believed the illness had recurred.  Macahilas Decl. ¶ 9.  He asked to
12 see a doctor, but Taylor refused.  Id. ¶¶ 9, 12.  Plaintiff avers Taylor flipped through his medical
13 file and commented on his past treatment for bronchitis, but nevertheless told him that the
14 current illness was just a cold.  Id. ¶ 9.  Taylor does not deny this nor does she deny that
15 plaintiff's medical records show his history of bronchitis.

16 No doctor examined plaintiff until January 21, 2005, when he was taken by
17 ambulance to Doctor's Hospital in Manteca and was diagnosed with necrotizing pneumonitis.
18 Id. ¶¶ 13-14 & Ex. 7.

III. Analysis

20 In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that
21 inadequate medical care did not constitute cruel and unusual punishment cognizable under
22 section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious
23 medical needs."
24 /////
25 /////
26 /////

In the Ninth Circuit, the test for deliberate indifference consists of two parts:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059.

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment

Id. at 1060.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998). A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapely v. Nevada Bd. Of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir. 1985). However,

1  unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth
2  Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.
3        Defendant Taylor does not dispute that plaintiff's condition constituted a serious
4  medical need, but rather argues that she was not deliberately indifferent to those needs because
5  she evaluated plaintiff according to CDCR procedures, brought his condition to the attention of a
6  physician and then administered the medicine prescribed by that physician.
7        Plaintiff is understandably upset about his January hospitalization and its lingering
8  aftermath – pneumonia so severe that breathing tubes were inserted in his chest and throat.
9  Macahilas Decl. ¶ 17 & Ex. 7.  Nevertheless, the court cannot substitute the ultimate severity of
10 plaintiff's illness for a reasoned evaluation of Taylor's acts or omissions in late December 2004.
11       Although Taylor does not acknowledge that plaintiff told her of his history of
12 bronchitis, CDCR policy suggests she had plaintiff's medical records when she evaluated him.
13 Taylor Decl., Ex. A, Section III.C.1-4.  Even if the court were to find a dispute in the evidence on
14 the question of whether Taylor was aware of plaintiff's history of bronchitis, such a dispute
15 would not ultimately change the outcome of the motion.  As noted, defendant Taylor's evaluation
16 showed plaintiff's lungs were clear, he did not have a fever, and he was able to expel mucous
17 through coughing.  Id. ¶ 8 & Ex. C.  If Taylor had diagnosed plaintiff's illness on December 23,
18 2004, as bronchitis rather than a cold, nothing in the record suggests she would have scheduled a
19 doctor's visit, given plaintiff's physical symptoms at the time.  Moreover, plaintiff has presented
20 nothing showing that a doctor would have prescribed antibiotics rather than cough drops had the
21 doctor examined plaintiff on December 23, 2004 instead of relying on defendant Taylor's
22 description of plaintiff's symptoms.  In fact, plaintiff has presented no evidence supporting his
23 claim that a prescription for antibiotics rather than cough drops was required upon a diagnosis of
24 bronchitis for someone with a history of bronchitis, in the absence of a fever or other indications
25 of infection.  There is no disputed issue of material fact on the question of whether Taylor
26 ignored a substantial risk of serious harm to plaintiff's health when she did not schedule plaintiff

to see a doctor on December 23, 2004.  Cf. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

Plaintiff speculates that Taylor's failure to act stemmed from her displeasure over the interruption to her lunch caused by plaintiff's arrival at the clinic and his disagreement with her diagnosis of him.  Macahilas Decl. ¶ 12.  He describes Taylor's irritation, her announcement that it was lunchtime and her order that plaintiff leave the clinic.  Id.  Plaintiff's speculation regarding Taylor's reasons for refusing to schedule a doctor's appointment for plaintiff will not defeat summary judgment, particularly in light of the lack of evidence that plaintiff's objective symptoms and history of bronchitis would otherwise have caused a nurse to refer him for a physical examination by a doctor.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (speculative affidavit will not defeat summary judgment).

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (docket no. 37) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 31, 2009.

U.S. MAGISTRATE JUDGE

2 maca0502.msj